DAVID J. WINTERTON, ESQ.
Nevada Bar No. 004142
DAVID J. WINTERTON & ASSOC., LTD.
7881 W Charleston Blvd., Suite 220
Las Vegas, Nevada 89117
Telephone: (702) 363-0317
Facsimile: (702) 363-1630
david@davidwinterton.com

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

| In re: | Case No. 23-14412-hlb |
|---|---|
| SPACE SHADOW LLC | Chapter 11 |
| Debtor. | Date: February 28, 2024<br>Time: 2:30 p.m. |

## DISCLOSURE STATEMENT FOR SMALL BUSINESS UNDER CHAPTER 11

SPACE SHADOW LLC's Disclosure Statement, Dated January 8, 2024

## TABLE OF CONTENTS

| | | |
|---|---|---|
| I. | Introduction | 4 |
| | A. Purpose of This Document | 4 |
| | B Deadlines for Voting and Objecting: Date Of Plan Confirmation Hearing | 4 |
| | C. Disclaimer | 5 |
| | | |
| II. | Background | 5 |
| | A. Description and History of the Debtor's Business | 5 |
| | B. Insiders of the Debtor | 5 |
| | C. Management of the Debtor During the Bankruptcy | 5 |
| | D. Events Leading to Chapter 11 Filing | 5 |
| | E. Significant Events During the Bankruptcy Case | 6 |
| | F. Projected Recovery of the Avoidable Transfers | 6 |
| | G. Claims Objections | 7 |
| | H. Current and Historical Financial Conditions | 7 |
| | | |
| III. | Summary of the Plan of Reorganization and Treatment of Claims and Equity Interests | 7 |
| | A. What is the Purpose of the Plan of Reorganization? | 7 |

|  |  |  |
|---|---|---|
| B. Unclassified Claims | | 7 |
| 1. Administrative expenses, involuntary gap claims, and quarterly and Court Fees | | 8 |
| 2. Priority tax claims | | 9 |
| C. Classes of Claims and Equity Interests | | 9 |
| 1. Classes of secured claims | | 9 |
| 2. Classes of Priority unsecured claims | | 10 |
| 3. Classes of general unsecured claims | | 10 |
| 4. Classes of equity interest holders | | 11 |
| D. Means of Implementing the Plan | | 11 |
| 1. Source of payments | | 11 |
| 2. Post-confirmation Management | | 12 |
| E. Risk Factors | | 12 |
| F. Executory Contracts and Unexpired Leases | | 12 |
| G. Tax Consequences of Plan | | 13 |
| IV. | Confirmation Requirements and Procedures | 13 |
| | A. Who May Vote or Object | 14 |
| | 1. What is an allowed claim or an allowed equity interest? | 14 |
| | 2. What is an impaired claim or impaired equity interest? | 14 |
| | 3. Who is not entitled to vote? | 15 |
| | 4. Who can vote in more than one class | 15 |
| | B. Votes Necessary to Confirm the Plan | 15 |
| | 1. Votes necessary for a class to accept the plan | 15 |
| | 2. Treatment of non-accepting classes of secured claims, general unsecured claims, and interests | 16 |
| | C. Liquidation Analysis | 16 |
| | D. Feasibility | 16 |
| | 1. Ability to initially fund plan | 16 |
| | 2 Ability to make future plan payments and operate without further reorganization | 17 |
| V. | Effect of Confirmation of Plan | 17 |
| | A. Discharge of Debtor | 17 |
| | B. Modification of Plan | 18 |
| | C. Final Decree | 19 |
| VI. | Other Plan Provisions | 19 |
| | Exhibit A: Copy of Proposed Plan of Reorganization | 20 |
| | Exhibit B: Identity and Value of Material Assets of Debtor | 21 |
| | Exhibit C: Pre Petition Financial Statements | 22 |
| | Exhibit D: [Most Recently Filed Post Petition Operating Report] | 23 |
| | Exhibit E: Liquidation Analysis | 24, 25 |

2

Exhibit F: Cash on hand on the effective date of the Plan          26
Exhibit G: Projections of Cash Flow for Post-Confirmation Period   27

3

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.  Introduction

This is the disclosure statement (the Disclosure Statement) in the small business chapter 11 case of SPACE SHADOW LLC, (the Debtor). This Disclosure Statement provides information about the Debtor and the Plan filed on Juanary 8, 2024 (the Plan) to help you decide how to vote.

A copy of the Plan is attached as Exhibit A. Your rights may be affected. You should read the Plan and this Disclosure Statement carefully. You may wish to consult an attorney about your rights and your treatment under the Plan.

The proposed distributions under the Plan are discussed at pages 8 - 11 of this Disclosure Statement. [General unsecured creditors are classified in Class 4, and will received a distribution of 100% of their allowed claims, to be distributed upon the sale of the Real Property.

## A.  Purpose of This Document

This Disclosure Statement describes:

- The Debtor and significant events during the bankruptcy case,
- How the Plan proposes to treat claims or equity interests of the type you hold (i.e., what you will receive on your claim or equity interest if the plan is confirmed),
- Who can vote on or object to the Plan
- What factors the Bankruptcy Court (the Court) will consider when deciding whether to confirm the Plan
- Why [the proponent] believes the Plan is feasible, and how the treatment of your claim or equity interest under the Plan compares to what you would receive on your claim or equity interest in liquidation, and
- The effect of confirmation of the Plan

Be sure to read the Plan as well as the Disclosure Statement. This Disclosure Statement describes the Plan, but it is the Plan itself that will, if confirmed, establish your rights.

## B.  Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing

The Court has not yet confirmed the Plan described in this Disclosure Statement. A separate order has been entered setting the following information.

- Time and place of the hearing to [finally approve this disclosure statement and ] confirm the plan,
- Deadline for voting to accept or reject the plan, and

4

- Deadline for objecting to the [adequacy of disclosure and ] confirmation of the plan

If you want additional information about the Plan or the voting procedure, you should contact David J. Winterton, Esq. of the law firm of David J. Winterton & Associates, Ltd. counsel for the Debtor.

## C. Disclaimer

The Court has [conditionally] approved this Disclosure Statement as containing adequate information to enable parties affected by the Plan to make an informed judgment about its terms. The Court has not yet determined whether the Plan meets the legal requirements for confirmation, and the fact that the Court has approved this Disclosure Statement does not constitute an endorsement of the Plan by the Court, or a recommendation that it be accepted.

## II. Background

## A. Description and History of the Debtor's Business

The Debtor is a Limited Liability Company. It commend operations on May 30, 2014. The Debtor has been operating the real property located at 249 N. Stephanie Street, Henderson, Nevada. This is a commercial retail building.

## B. Insiders of the Debtors

Kayvoughn Moradi is the Manager-Member of the LLC. He has been receiving a manager fees around $5,000 to $7,000 based upon the funds available to pay. There were times when the manager would not get paid.

## C. Management of the Debtor During the Bankruptcy

The manager of the Debtor will remain the same as he operates the Debtor and pays the debts.

## D. Events Leading to Chapter 11 Filing

The Debtor fell behind in its payments to the mortgage holder and they proceeded to commence foreclosure. There is substantial equity in the property so the Debtor filed to preserve the equity.

5

**E. Significant Events During the Bankruptcy Case**

The Debtor filed bankruptcy on October 9, 2023. On October 23, 2023, the Debtor filed its full schedules for the bankruptcy.

The meeting of creditors was scheduled for November 9, 2023. It was continued to January 3, 2024. It was then, again continued to February 14, 2024 to allow the new counsel to get up to speed.

On October 11, 2023, there was an application to employ Andersen & Beede as counsel for the Debtor. On November 10, 2023, proposed counsel for the Debtor filed a Motion to Withdraw their application and to withdraw from the case. On December 6, 2023, Counsel withdrew from the case. Ex-counsel for the Debtor filed a fee application in the amount of $18, 968.50. This motion is pending.

On October 12, 2023, the law firm of Hutchinson and Steffen entered an appearance for the main creditor Avatar Reit I LLC. On November 9, 2023, Avatar Reit I LLC filed an adversary proceeding to determine the rights to the rents of the property of the Debtor. On December 21, 2023, Avatar Reit I LLC filed a motion for relief from the stay. It was opposed by the Debtor.

The Debtor has obtained new counsel. On January 2, 2024 Counsel David J. Winterton filed an application to be employed. On January 2, 2024, there was an application to employ an Realtor to sell the Real Property of the Debtor. On January 2, 2024, Counsel filed a Motion to jointly administer the cases.

**F. Projected Recovery of Avoidable Transfers**
   **CHECK ONE BOX**

X    The Debtor does not intend to pursue preference, fraudulent conveyance, or other avoidance actions.

☐    The Debtor estimates that up to $_____ may be realized from the recovery of fraudulent, preferential or other avoidable transfers. While the results of litigation cannot be predicted with certainty and it is possible that other causes of action may be identified, the following is a summary of the preference, fraudulent conveyance and other avoidance actions filed or expected to be filed in this case:

| Transaction | Defendant | Amount Claimed |
| --- | --- | --- |
| | | |

☐    The Debtor has not yet completed its investigation with regard to pre petition transactions. If you received a payment or other transfer within 90 days of the bankruptcy, or other transfer avoidable under the Code, the Debtor may seek to

avoid such transfer.

### G. Claims Objections

Except to the extent that a claim is already allowed pursuant to a final non-appealable order, the Debtor reserves the right to object to claims. Therefore, even if your claim is allowed for voting purposes, you may not be entitled to a distribution if an objection to your claim is later upheld. Disputed claims are treated in Article 5 of the Plan.

### H. Current and Historical Financial Conditions

The identity and fair market value of the estate's assets are listed in Exhibit B. The Debtor paid for the mortgage holder to do an appraisal. The appraisal value is based upon that appraisal.

The Debtor's most recent financial statements [if any] issued before bankruptcy, each of which was filed with the Court, are set forth in Exhibit C.

The most recent post-petition operating report filed since the commencement of the Debtor's bankruptcy case is set forth in Exhibit D.

[A summary of the Debtor's periodic operating reports filed since the commencement of the Debtor's bankruptcy case is set forth in Exhibit D.]

### III. Summary of the Plan of Reorganization and Treatment of Claims and Equity Interests

### A. What is the Purpose of the Plan of Reorganization?

As required by the Code, the Plan places claims and equity interests in various classes and describes the treatment each class will receive. The Plan also states whether each class of claims or equity interests is impaired or unimpaired. If the Plan is confirmed, your recovery will be limited to the amount provided by the Plan.

### B. Unclassified Claims

Certain types of claims are automatically entitled to specific treatment under the Code. They are not considered impaired, and holders of such claims do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code. Therefore, the Plan Proponent has not placed the following claims in any class:

7

1. Administrative expenses, involuntary gap claims, and quarterly and Court fees

Administrative expenses are costs or expenses of administering the Debtor's chapter 11 case which are allowed under § 503(b) of the Code. Administrative expenses include the value of any goods sold to the Debtor in the ordinary course of business and received within 20 days before the date of the bankruptcy petition, and compensation for services and reimbursement of expenses awarded by the court under § 330(a) of the Code. The Code requires that all administrative expenses be paid on the effective date of the Plan, unless a particular claimant agrees to a different treatment. Involuntary gap claims allowed under § 502(f) of the Code are entitled to the same treatment as administrative expense claims. The Code also requires that fees owed under section 1930 of title 28, including quarterly and court fees, have been paid or will be paid on the effective date of the Plan.

The following chart lists the Debtor's estimated administrative expenses, and quarterly and court fees, and their proposed treatment under the Plan:

| **Type** | **Estimated Amount Owed** | **Proposed Treatment** |
| --- | --- | --- |
| Administrative expenses | | |
| David J. Winterton & Associates, Ltd. | $25,000 (est.) | Paid in full on the effective date of the Plan, unless the holder of a particular claim has agreed to different treatment |
| Anderson & Beede | $18,968.50 | Paid in full on the effective date of the Plan, unless the holder of a particular claim has agreed to different treatment |
| Involuntary gap claims | (None) | Paid in full on the effective date of the Plan, unless the holder of a particular claim has agreed to different treatment |
| Statutory Court Fees | (None) | Paid in full on the effective date of the Plan |

8

| | | |
|---|---|---|
| Statutory quarterly Fees | (None due) | Paid in full on the effective date of the Plan |

Total                    $43,968.50

## 2. Priority tax claims

Priority tax claims are unsecured income, employment, and other taxes described by § 507(a)(8) of the Code. Unless the holder of such a § 507(a)(8) priority tax claim agrees otherwise, it must receive the present value of such claim pursuant to 11 U.S.C. § 511, in regular installments paid over a period not exceeding 5 years from the order of relief. The following chart lists the Debtor's estimated § 507(a)(8) priority tax claims and their proposed treatment under the Plan:

None

## C. Classes of Secured Claims

The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

1.      Classes of secured claims
Allowed Secured Claims are claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under § 506 of the Code. If the value of the collateral or setoffs securing the creditor's claim is less than the amount of the creditor's allowed claim, the deficiency will [be classified as a general unsecured claim].

The following chart lists all classes containing Debtor's secured pre petition claims and their proposed treatment under the Plan:

| Class | Description | Impaired/ unimpaired | Treatment |
|---|---|---|---|
| | | | |

9

| 1 | Avatar Reit I, LLC They claim a debt of $4,294,898.65. They have a security interest in the real property located at 249 No. Stephanie Street, Henderson, Nevada. The note balloons in January of 2024. | Impaired | They will receive monthly payments per the note from the rents collected from the tenants. Payments will commence on the Effective Date. They will be paid in full upon the sale of the real property. They will be paid in full within two (2) years from confirmation or earlier if the property sells. Their lien will remain in place |
|---|---|---|---|
| 2 | Republic Services - The claim $4,542.27 is secured in claim register 2-1. They have not provided any proof of security. It would be on the Property located at | Impaired | They will receive they post petition payments when they are due. The payments will come from the rents of the property. They will be paid in full upon the sale of the real property. They will be paid in full within two (2) years from confirmation or earlier if the property sells. |
| 3 | Sanchez Hauling and Disposal | Impaired | They will receive they post petition payments when they are due. The payments will come from the rents of the property. They will be paid in full upon the sale of the real property. They will be paid in full within two (2) years from confirmation or earlier if the property sells |

**2.    Classes of priority unsecured claims**

The Code requires that, with respect to a class of claims of a kind referred to in §§ 507(a)(1),(4), (5), (6), and (7), each holder of such a claim receive cash on the effective date of the Plan equal to the allowed amount of such claim, unless a particular claimant agrees to a different treatment or the class agrees to deferred cash payments.
None

**3.    Classes of general unsecured claims**

General unsecured claims are not secured by property of the estate and are not entitled to priority under § 507(a) of the Code. [Insert description of § 1122(b) convenience class if applicable.]

10

The following chart identifies the Plan's proposed treatment of classes ☐ through ☐which contain general unsecured claims against the Debtor:

| Class | Description | Impaired/ unimpaired | Treatment |
|-------|-------------|----------------------|-----------|
| 4.1 | Nevada Power Company | Impaired | They will be paid in full within 30 days from the sale of the real property. |
| 4.2 | Republic Services | Impaired | They will be paid in full within 30 days from the sale of the real property. |
| 4.3 | BTI Consulting and Structural Engineers - Engineering Services ($3,600.00) | Impaired | They will be paid in full within 30 days from the sale of the real property. |
| 4.4 | Diamond Concrete - Services ($5,800.00) | Impaired | They will be paid in full within 30 days from the sale of the real property |
| 4.5 | Gonzalez Painting services ( $8,200.00) | Impaired | They will be paid in full within 30 days from the sale of the real property |
| 4.6 | | | |

**4.      Classes of equity interest holders**

Equity interest holders are parties who hold an ownership interest (i.e., equity interest) in the Debtor. In a limited liability company (LLC), the equity interest holders are the members.

The following chart sets forth the Plan's proposed treatment of the classes of equity interest holders:

| Class # | Description | Impairment | Treatment |
|---------|-------------|------------|-----------|
| 5 | Equity interest holders | Unimpaired | They will retain their interest in the Debtor |

**D.      Means of Implementing the Plan**

  1. Source of payments

        Payments and distributions under the Plan will be funded by the following:

The source of funds will come from the rental of the properties. In addition, the balance of the funds to pay off the creditors will come from the sale of the real property.

### 2. Post-Confirmation Management

The Post-Confirmation Management of the Debtor (including officers, directors, managing members, and other persons in control), and their compensation, shall be as follows:

| Name | Position | Compensation |
|---|---|---|
| Kayvoughn Moradi | Managing Member | $7,000 per month |

### E. Risk Factors

The proposed Plan has the following risks:

The only real risk is that the property does not sell. If it does not sell, then the secured creditor would foreclose and get paid in full. The remaining creditors would not get paid at all if that is the case.

### F. Executory Contracts and Unexpired Leases

The Plan in Article 6 lists all executory contracts and unexpired leases that the Debtor will assume, and if applicable assign, under the Plan. Assumption means that the Debtor has elected to continue to perform the obligations under such contracts and unexpired leases, and to cure defaults of the type that must be cured under the Code, if any. Article 6 also lists how the Debtor will cure and compensate the other party to such contract or lease for any such defaults.

If you object to the assumption, and if applicable the assignment, of your unexpired lease or executory contract under the Plan, the proposed cure of any defaults, the adequacy of assurance of performance, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan, unless the Court has set an earlier time.

All executory contracts and unexpired leases that are not listed in Article 6 or have not previously been assumed, and if applicable assigned, or are not the subject of a pending motion to assume, and if applicable assign, will be rejected under the Plan. Consult your adviser or attorney for more specific information about particular contracts or leases.

If you object to the rejection of your contract or lease, you must file and serve your

12

objection to the Plan within the deadline for objecting to the confirmation of the Plan.
Thirty days from confirmation.
[The deadline for filing a Proof of Claim based on a claim arising from the rejection of a
lease or contract is 30 days after the Confirmation Order is entered.

Any claim based on the rejection of a contract or lease will be barred if the proof
of claim is not timely filed, unless the Court orders otherwise.]

**G. Tax Consequences of Plan**

Creditors and equity interest holders concerned with how the plan may affect their tax
liability should consult with their own accountants, attorneys, and/or advisors.
The following are the anticipated tax consequences of the Plan: [List the following
general consequences
as a minimum:

1). Tax consequences to the Debtor of the Plan;
The only risk is that the Debtor may have to pay capital gains tax on the long term
profit or do a 1031 exchange.

2). General tax consequences on creditors of any discharge, and the general tax
consequences of receipt of plan consideration after confirmation.]
It is advisable that you speak to your accountant or professional how this would
affect your own taxes.

**IV.    Confirmation Requirements and Procedures**

To be confirmable, the Plan must meet the requirements listed in §1129 of the Code.
These include the requirements that:

--    the Plan must be proposed in good faith;

--    if a class of claims is impaired under the Plan, at least one impaired class of claims
       must accept the Plan, without counting votes of insiders;

--    the Plan must distribute to each creditor and equity interest holder at least as much
       as the creditor or equity interest holder would receive in a chapter 7 liquidation
       case, unless the creditor or equity interest holder votes to accept the Plan; and

--    the Plan must be feasible.

These requirements are not the only requirements listed in §1129, and they are not the

only requirements for confirmation.

**A. Who May Vote or Object**

Any party in interest may object to the confirmation of the Plan if the party believes that the requirements for confirmation are not met.
Many parties in interest, however, are not entitled to vote to accept or reject the Plan. Except as stated in Part IV.A.3 below, a creditor or equity interest holder has a right to vote for or against the Plan only if that creditor or equity interest holder has a claim or equity interest that is both

1).    Allowed or allowed for voting purposes and
2).    Impaired.

In this case, the Plan Proponent believes that classes 1,2,3,4, and 5 are impaired and that holders of claims in each of these classes are therefore entitled to vote to accept or reject the Plan. The Plan Proponent believes that classes o are unimpaired and that holders of claims in each of these classes, therefore, do not have the right to vote to accept or reject the Plan.

**1. What is an allowed claim or an allowed equity interest?**

Only a creditor or equity interest holder with an allowed claim or an allowed equity interest has the right to vote on the Plan. Generally, a claim or equity interest is allowed if either
(1)    the Debtor has scheduled the claim on the Debtor's schedules, unless the claim has been scheduled as disputed, contingent, or unliquidated, or
(2)    the creditor has filed a proof of claim or equity interest, unless an objection has been filed to such proof of claim or equity interest.

When a claim or equity interest is not allowed, the creditor or equity interest holder holding the claim or equity interest cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim or equity interest for voting purposes pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure.

The deadline for filing a proof of claim in this case is February 7, 2024
The deadline for governmental proof of claims is April 6, 2024

**2. What is an impaired claim or impaired equity interest?**

As noted above, the holder of an allowed claim or equity interest has the right to

vote only it if is in a class that is impaired under the Plan. As provided in § 1124 of the Code, a class is considered impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class.

### 3. Who is not entitled to vote

The holders of the following five types of claims and equity interests are not entitled to vote:

- holders of claims and equity interests that have been disallowed by an order of the Court;
- holders of other claims or equity interests that are not "allowed claims" or "allowed equity interests" (as discussed above), unless they have been "allowed" for voting purposes;
- holders of claims or equity interests in unimpaired classes;
- holders of claims entitled to priority pursuant to §§ 507(a)(2), (a)(3), and (a)(8) of the Code;
- holders of claims or equity interests in classes that do not receive or retain any value under the Plan; and
- administrative expenses.

Even if you are not entitled to vote on the plan, you have a right to object to the confirmation of the Plan [and to the adequacy of the Disclosure Statement].

### 4. Who can vote in more than one class

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim, or who otherwise hold claims in multiple classes, is entitled to accept or reject a Plan in each capacity, and should cast one ballot for each claim.

## B. Votes Necessary to Confirm the Plan

If impaired classes exist, the Court cannot confirm the Plan unless:
(1)     all impaired classes have voted to accept the Plan; or
(2)     at least one impaired class of creditors has accepted the Plan without counting the votes of any insiders within that class, and the Plan is eligible to be confirmed by "cram down" of the non-accepting classes, as discussed later in Section B.2.

1.     Votes necessary for a class to accept the plan

A class of claims accepts the Plan if both of the following occur:

(1)    the holders of more than ½ of the allowed claims in the class, who vote, cast their votes to accept the Plan, and

(2)    the holders of at least ⅔ in dollar amount of the allowed claims in the class, who vote, cast their votes to accept the Plan.

A class of equity interests accepts the Plan if the holders of at least ⅔ in amount of the allowed equity interests in the class, who vote, cast their votes to accept the Plan.

2. Treatment of non-accepting classes of secured claims, general unsecured claims, and interests

Even if one or more impaired classes reject the Plan, the Court may nonetheless confirm the Plan upon the request of the Plan proponent if the non-accepting classes are treated in the manner prescribed by § 1129(b) of the Code. A plan that binds non-accepting classes is commonly referred to as a cram down plan. The Code allows the Plan to bind non-accepting classes of claims or equity interests if it meets all the requirements for consensual confirmation except the voting requirements of § 1129(a)(8) of the Code, does not discriminate unfairly, and is fair and equitable toward each impaired class that has not voted to accept the Plan.

You should consult your own attorney if a cram down confirmation will affect your claim or equity interest, as the variations on this general rule are numerous and complex.

**C. Liquidation Analysis**

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation. A liquidation analysis is attached to this Disclosure Statement as Exhibit E.

**D. Feasibility**

The Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan.

1. Ability to initially fund the plan
   The Plan Proponent believes that the Debtor will have enough cash on hand on

the effective date of the Plan to pay all the claims and expenses that are entitled to be paid on that date. Tables showing the amount of cash on hand on the effective date of the Plan, and the sources of that cash are attached to this disclosure statement as Exhibit F.

2. Ability to make future plan payments and operate without further reorganization
The Plan Proponent must also show that it will have enough cash over the life of the Plan to make the required Plan payments and operate the debtor's business. The Plan Proponent has provided projected financial information. Those projections are listed in Exhibit G.

The Plan Proponent's financial projections show that the Debtor will have an aggregate annual average cash flow, after paying operating expenses and post-confirmation taxes.

The final Plan payment is expected to be paid on sale of the Property. It is anticipated it will sell before the close of 2024.

You should consult with your accountant or other financial advisor if you have any questions pertaining to these projections.

## V. Effect of Confirmation of Plan

### A. Discharge of Debtor

CHECK ONE BOX

☐    Discharge if the Debtor is an individual and 11 U.S.C. § 1141(d)(3) is not applicable. Confirmation of the Plan does not discharge any debt provided for in the Plan until the court grants a discharge on completion of all payments under the Plan, or as otherwise provided in § 1141(d)(5) of the Code. Debtor will not be discharged from any debt excepted from discharge under § 523 of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

X    Discharge if the Debtor is a partnership and § 1141(d)(3) of the Code is not applicable. On the effective date of the Plan, the Debtor shall be discharged from any debt that arose before confirmation of the Plan, subject to the occurrence of the effective date, to the extent specified in § 1141(d)(1)(A) of the Code. However, the Debtor shall not be discharged from any debt imposed by the Plan. After the effective date of the Plan your claims against the Debtor will be limited to the debts imposed by the Plan.

☐      Discharge if the Debtor is a corporation and § 1141(d)(3) is not applicable. On the effective date of the Plan, the Debtor shall be discharged from any debt that arose before confirmation of the Plan, subject to the occurrence of the effective date, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor shall not be discharged of any debt:

          (i)      imposed by the Plan, or

          (ii)      to the extent provided in 11 U.S.C§ 1141(d) (6)

☐      No Discharge if § 1141(d)(3) is applicable. In accordance with § 1141(d)(3) of the Code, the Debtor will not receive any discharge of debt in this bankruptcy case.

**B. Modification of Plan**

The Plan Proponent may modify the Plan at any time before confirmation of the Plan. However, the Court may require a new disclosure statement and/or re-voting on the Plan.

The Plan Proponent may also seek to modify the Plan at any time after confirmation only if

(1) The Plan has not been substantially consummated and
(2) the Court authorizes the proposed modifications after notice and a hearing.

If the Debtor is an individual, add the following:

Upon request of the Debtor, the United States trustee, or the holder of an allowed unsecured claim, the Plan may be modified at any time after confirmation of the Plan but before the completion of payments under the Plan, to

(1) increase or reduce the amount of payments under the Plan on claims of a particular class,

(2) extend or reduce the time period for such payments, or

(3) alter the amount of distribution to a creditor whose claim is provided for by the Plan to the extent necessary to take account of any payment of the claim made other than under the Plan.]

18

## C. Final Decree

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Plan Proponent, or such other party as the Court shall designate in the Plan Confirmation Order, shall file a motion with the Court to obtain a final decree to close the case. Alternatively, the Court may enter such a final decree on its own motion.

## VI Other Plan Provisions

Insert other provisions here, as necessary and appropriate.]

x _Kaxbyahn Noad._    Kayvoughn Moad;

Signature of the Plan Proponent    Printed Name

x _____    David Winforton Esq_

Signature of the Attorney for the    Printed Name
Plan Proponent

EXHIBITS:

Exhibit A: Copy of the Proposed Plan of Reorganization:

Debtor Name SPACE SHADOW LLC

Case number: 23-14412-HLB

| Fill in this | |
|---|---|
| Debtor Name: SPACE SHADOW LLC | |
| United States Bankruptcy Court for the:_____  District of:  NEVADA  (State) | |
| Case number: 23-14412-HLB  . | |

Check if this is an amended filing

Official Form 425A

## Plan of Reorganization for Small Business Under Chapter 11

02/20

Space        Shadow LLC's Plan of Reorganization, Dated January 8, 2024

## Article 1: Summary

This Plan of Reorganization (the *Plan*) under chapter 11 of the Bankruptcy Code (the *Code*) proposes to pay creditors the creditors in full from the operation and sale of the real property of the Debtor.

This Plan provides for:      __3__   classes of secured claims;
                              __1__   class of non-priority unsecured claims;
                              __1__   and class of equity security holders.

Non-priority unsecured creditors holding allowed claims will receive distributions, which the proponent of this Plan has valued at approximately 100 cents on the dollar. This Plan also provides for the payment of administrative and priority claims.

All creditors and equity security holders should refer to Articles 3 through 6 of this Plan for information  regarding the precise treatment of their claim. A disclosure statement that provides more detailed information regarding this Plan and the rights of creditors and equity security holders has been circulated with this Plan. **Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.**

Debtor Name SPACE SHADOW LLC                                                                      Case number: 23-14412-HLB

## Article 2:    Classification of Claims and Interests

1.    Class 1    All of the Allowed Secured Claims of Avatar Reit I LLC in the amount of

2.    Class 2    All of the Allowed Secured Claims of Republic Services in the amount of
$4,542.27

3.    Class 3    All of the Allowed Secured Claims of Sanchez Hauling & Disposal in the amount
of $3,956.00

4.    Class 4    All of the Allowed Unsecured Claims totaling $21,600.00.

5.    Class 5    Equity interests of the Debtor.

## Article 3:    Treatment of Administrative Expense Claims, Priority Tax Claims, and Quarterly and Court Fees

3.1    Unclassified claims    Under section § 1123(a)(1), administrative expense claims, ["gap"
period claims in an  involuntary case allowed under § 502(f) of the
Code,] and priority tax claims are not in classes.

3.2    Administrative Expenses    Each hold of an administrative expense claim allowed under 503 of
the code, will be paid in full on the effective date of this Plan, in
cash or upon such other terms as may be agreed upon by the
holder of the claim and the Debtor

Or

Each holder of an administrative expense claim allowed under 503
of the Code will be paid upon the sale of the Real Property

3.3    Priority tax claims    Each hold of a priority tax claim will be paid consistent with 11
U.S.C. 1129(a)(c)(9) © of the Code

3.4    Statutory fees    All fees required to be paid under 28 U.S.C. § 1930 that are owed
on or before    the effective date of this Plan have been paid or will
be paid on the effective date.

3.5  Prospective quarterly fees  All quarterly fees required to be paid under 28 U.S.C. 1930(a)(6) or
(a) (7) will accrue and be timely paid until the case is closed,

Debtor Name SPACE SHADOW LLC                                                                    Case number: 23-14412-HLB

dismissed or converted to another chapter of the Code.

## Article 4:    Treatment of Claims and Interests Under the Plan

4.1    Claims and interests shall be treated as follows under this Plan:

The following chart lists all classes containing Debtor's secured pre petition claims and their proposed treatment under the Plan:

| Class | Description | Impaired/ unimpaired | Treatment |
|---|---|---|---|
| 1 | Avatar Reit I, LLC They claim a debt of $4,294,898.65. They have a security interest in the real property located at 249 N. Stephanie Street, Henderson Nevada. They are also secured with six other residential properties. The value of the building is $7,851,000.00. The note balloons in January of 2024. | Impaired | They will receive monthly payments per the note from the rents collected from the tenants. Payments will commence on the Effective Date. They will be paid in full upon the sale of the real property. They will be paid in full within two (2) years from confirmation or earlier if the property sells. Their lien will remain in place |
| 2 | Republic Services  - The claim $4,542.27 is secured in claim register 2-1. They have not provided any proof of security. It would be on the Property located at | Impaired | They will receive they post petition payments when they are due. The payments will come from the rents of the property. They will be paid in full upon the sale of the real property. They will be paid in full within two (2) years from confirmation or earlier if the property sells. |
| 3 | Sanchez Hauling and Disposal $3,956.00 | Impaired | They will receive they post petition payments when they are due. The payments will come from the rents of the property. They will be paid in full upon the sale of the real property. They will be paid in full within two (2) years from confirmation or earlier if the property sells |

## 4.2    Unsecured Creditors

The following chart identifies the Plan's proposed treatment of classes ☐ through ☐ which contain general unsecured claims against the Debtor:

| Class | Description | Impaired/ unimpaired | Treatment |
|---|---|---|---|
| 4.1 | Nevada Power Company ($3,708.34) | Impaired | They will be paid in full within 30 days from the sale of the real property. |
| 4.2 | Republic Services ($3,264.19) | Impaired | They will be paid in full within 30 days from the sale of the real property. |
| 4.3 | BTI Consulting and Structural Engineers - Engineering Services ($3,600.00) | Impaired | They will be paid in full within 30 days from the sale of the real property. |
| 4.4 | Diamond Concrete - Services ($5,800.00) | Impaired | They will be paid in full within 30 days from the sale of the real property |
| 4.5 | Gonzalez Painting services ( $8,200.00) | Impaired | They will be paid in full within 30 days from the sale of the real property |
| 4.6 | $21.242.53 | | |

## 4.03.  Classes of Equity Interest Holders

Equity interest holders are parties who hold an ownership interest (i.e., equity interest) in the Debtor. In a corporation, entities holding preferred or common stock are equity interest holders. In a partnership, equity interest holders include both general and limited partners. In a limited liability company (LLC), the equity interest holders are the members. Finally, with respect to an individual who is a debtor, the Debtor is the equity interest holder.

## Article 5:    Allowed and Disallowance of Claims

| 5.01 | Disputed Claim | | A disputed claim is a claim that has not been allowed or disallowed [by a final non-appealable order], and as to which either: |
|---|---|---|---|

| | | (I) | a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or |
|---|---|---|---|

| | | (ii) | No proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated. |
|---|---|---|---|

5.02   Delay of distribution on

a disputed claim            No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order.

5.03   Settlement of disputed
       Claims                The Debtor will have the power and authority to settle and · compromise a disputed calm with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

---

## Article 6:     Provision of Executive Contracts and Unexpired Leases

---

6.01   Assumed executory

contracts and unexpired

leases

(a) The Debtor assumes, and if applicable assigns, the following executory contracts and unexpired leases as of the effective date:

All leases relating to the commercial office building with the various tenants.  (A copy can be obtained from counsel.

(b) Except for executory contracts and unexpired leases that have been assumed, and if applicable assigned, before the effective date or under section 6.01(a) of this Plan, or that are the subject of a pending motion to assume, and if applicable assign, the Debtor will be conclusively deemed to have rejected all executory contracts and

unexpired leases as of the effective date.

A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than 30 days after the date of the order confirming this Plan.

## Article 7: Means for Implementation of the Plan

The Debtor has already implemented the plan by retaining the services of a Realtor.  Payments will be made from the current operating cash flow of the Debtor. In addition, they creditor has been seizing the rents.  When the property sells, the creditor will be paid in full.

## Article 8: General Provisions

### 8.1   Definitions and rules of construction

The definitions and rules of construction set forth in §§ 101 and 102 of the  Code shall apply when terms defined or construed in the Code are used in  this Plan, and they are supplemented by the following definitions:

8.1   "ADMINISTRATIVE CLAIM" means every Claim which is alleged to be entitled to allowance under Section 503(b) of the Bankruptcy Code or otherwise alleged to be entitled to priority pursuant to Section 507(a)(1) of the Bankruptcy Code.  Such Claims will include, but are not limited to, the following: (a) any actual, necessary expense of preserving the Estate; (b) any amount required to be paid under Section 365(b) of the Bankruptcy Code in connection with the curing of defaults under executory contracts or unexpired leases; © all allowances, including professional fees and costs, which the Bankruptcy Court is requested to approve for professionals employed by the Debtor; (d) any and all other allowances of fees and costs, including professional fees and costs, which the Bankruptcy Court is requested to approve under Section 503(b) of the Bankruptcy Code; (e) all fees payable pursuant to Section 1930 of Title 28 of the United States Code, as determined by the Bankruptcy Court at a hearing pursuant to Section 1128 of the Bankruptcy Code;

8.2   "ALLOWED ADMINISTRATIVE CLAIM" means an Administrative Claim (a) as to which

no objection has been filed or, if an objection has been filed, it has been resolved by the allowance of such Administrative Claim by an order of the Bankruptcy Court which has not been stayed, modified or vacated; (b) which requires payment in the ordinary course of business of the Debtor and as to which there is no order of the Bankruptcy Court in effect which prohibits any such payment; or (c) which requires payment pursuant to an order of the Bankruptcy Court which is not stayed, modified, or vacated.

8.3    "ALLOWED CLAIM" means a Claim, other than an Administrative Claim, which was listed in the Schedules and filed with the Bankruptcy Court by the Debtor and not listed as a disputed, contingent or unliquidated as to amount of the claim or a Proof of Claim with respect thereto was (a) timely filed pursuant to an order of the Bankruptcy Court;( b) deemed filed under Section 1111(a) of the Bankruptcy Code; or © late filed with leave of the  Bankruptcy Court; or without objection by the Debtor, or another party in interest within a time fixed by the Bankruptcy Court for objecting to each late filing; and if an objection has been filed it was filed within a time fixed by the Bankruptcy Court or this Plan;.(d) The Claim is allowed by a Final Order; or (e)   the Claim is allowed under this Plan.

8.4    "ALLOWED INTEREST" means any Common Stock Interest to which no objection to allowance thereof has been filed within any applicable time for objections or, if an objection has been filed, the Common Stock Interest has been allowed by a Final Order.

8.5    "ALLOWED PRIORITY CLAIM" means a Priority Claim which is an Allowed Claim pursuant to Sections 507(a)(3), (4) or (6) of the Bankruptcy Code.

8.6    "ALLOWED SECURED CLAIM" means a Secured Claim which is an Allowed Claim secured by a lien, security interest or other charge against the property in which the estate has an interest, or which is subject to set-off under Section 553 of the Bankruptcy Code, to the extent of the value, determined in accordance with Section 506(a) of the Bankruptcy Code, of the interest of the holder of such secured Claim in the state's interest in such property, or to the extent of the amount subject to any set-off, as the case may be.  An Allowed Secured Claim may include post-petition interest if permitted under Scion 506 (b) of the Code..

8.7    "ALLOWED UNSECURED CLAIM" means an Unsecured Claim which is an Allowed Claim.

8.8    "ASSUMPTION LIST" shall have the meaning set forth in Section 5.1 of this Plan.

8.9    "AVOIDANCE ACTION" means any adversary proceeding brought to seek the recovery of money or property on account of transactions avoidable under Section 544, 547, 548, 549 or 550 of the Bankruptcy Code.

8.10    "<u>BALLOT</u>" means the Ballot for accepting or rejecting this Plan in a form approved by the Bankruptcy Court.

8.11    "<u>BANKRUPTCY CODE</u>" means Title 11 of the United States Code, including any amendments thereto, which is in effect before and as of the Confirmation Date, and thereafter during the Reorganization Case to the extent that it is consistent with the vested rights under this Plan and the Confirmation Date.

8.12    "<u>BANKRUPTCY COURT</u>" means the United States Bankruptcy Court for the District of Nevada, or any successor thereto which may be established by an act of Congress, or otherwise, and which has competent jurisdiction over the Reorganization Case, the Estate, and this Plan.

8.13    "<u>BANKRUPTCY RULES</u>" means the Federal Rules of Bankruptcy Procedure, as amended, promulgated under 28 U.S.C. § 2075 and the Local Bankruptcy Rules, including any amendments thereto, which are in effect before and as of the Confirmation Date, and thereafter during the Reorganization Case to the extent that they are consistent with the vested rights under this Plan and the Confirmation Order.

8.14    "<u>BUSINESS DAY</u>" means any day except Saturday, Sunday, or legal holiday as defined in Bankruptcy Rule 9006(a).

8.15    "<u>BAR DATE</u>" means thirty (30) days after the Confirmation Date.

8.16    "<u>CASE</u>" the within Chapter 11 proceeding, known as SPACE SHADOW LLC, Case No. BK-S-23-14412-hlb pending before the United States Bankruptcy Court, District of Nevada.

8.17    "<u>CLAIM</u>" any right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed contingent, matured, unmatured, disputed, legal, equitable, secured or unsecured; or a right to an equitable remedy for breach of performance if such breach gives right to a right to payment, whether or not such right is an equitable remedy or is reduced judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

8.18    "<u>CLAIMANT</u>" means the holder of an Allowed Claim or an Allowed Administrative Claim.

8.19    "<u>CLASS</u>" means each of the categories of Allowed Claims and Allowed Interests described in Article III of this Plan.

8.20    "<u>COMMON STOCK INTERESTS</u>" means the issued and outstanding shares of stock of the Debtor as of the Confirmation Date.

8.21    "CONFIRMATION" means the entry of the Confirmation Order by the Bankruptcy Court.

8.22    "CONFIRMATION DATE" means the date on which the Confirmation Order is entered on the Bankruptcy Court's docket.

8.23    "CONFIRMATION ORDER" means the order of the Bankruptcy Court confirming the Plan pursuant to Section 1129 of the Bankruptcy Code.

8.24    "CREDITOR" means any Person which asserts a Claim.

8.25    "DEBTOR" means SPACE SHADOW LLC, in all its capacities, including its capacities as the debtor in the Reorganization Case.

8.26    "DEBTOR'S PROFESSIONALS" means DAVID J. WINTERTON & ASSOCIATES, LTD. and all other professionals retained by the Debtor with the approval of the Bankruptcy Court in accordance with Section 327 of the Bankruptcy Code.

8.27    "DISALLOWED CLAIM" means every Claim which is not an Allowed Claim or an Allowed Administrative Claim or to which the Debtor in good faith intends to object or to seek to subordinate before the deadline for taking such action set forth in the Plan or in an order of the Bankruptcy Court.

8.28    "DISCLOSURE STATEMENT" means the disclosure statement with respect to the Plan which is approved by the Bankruptcy Court under Section 1125 of the Bankruptcy Code.

8.29    "DISPUTED CLAIM" means every Claim which is not an Allowed Claim or an Allowed Administrative Claim or to which the Debtor in good faith intends to object or to seek to subordinate before the deadline for taking such action set forth in the Plan or in an order of the Bankruptcy Court.

8.30    "EFFECTIVE DATE" means The effective date of this Plan is the first business day following the date that is 14 days after the entry of the confirmation order. If, however, a stay of the confirmation order is in effect on that date, the effective date will be the first business day after the date on which the stay expires or is otherwise  terminated.

8.31    "ESTATE" means the estate created in this Reorganization Case pursuant to Section 541 of the Bankruptcy Code.

8.32    "ESTATE ASSETS" means all assets and property of every kind, nature and description in which the Debtor or its Estate has any right, title or interest that it not secured including, but not limited to:  all cash, cash equivalent, bank deposits, instruments, credit instruments, certificates of deposits and sight drafts, all executory contracts and leases which are not and have not been rejected,

all trademarks, trade names, service marks, displays, symbols, color arrangements, designs and logos.

8.33    "EXPIRATION DATE" means the last date determined by the Bankruptcy Court for the casting of Ballot which date shall be acceptable to the Proponent.

8.34    "FINAL ORDER" means an order, judgment or other decree which has not been vacated, reversed, stayed, modified or amended and: (a) as to which any appeal or certiorari proceeding which has been or may be prosecuted has been finally decided, or (b) as to which the time for such an appeal or certiorari proceeding has expired and as to which no appeal or petition for certiorari is pending.  Notwithstanding the foregoing, the Proponents will have the right, but not the obligation, to waive any requirement of a Final Order or to treat the requirement as being satisfied where the subject order, judgment, or other decree is not stayed and performance thereof will moot any appeal or certiorari proceeding.

8.35    "ORDER" an order or Judgment of the Bankruptcy Court as entered by the Clerk of the Court on the docket in this Case.

8.36    "PERSON" any natural person, corporation, general partnership, limited partnership association, joint stock company, joint venture, estate, trust, government or any political subdivision thereof, governmental unity (as defined in the Bankruptcy Code), official committee appointed by the United States Trustee or other legal entity.

8.37    "PETITION DATE" means February 5, 2004, the date on which a petition for relief under chapter 11 of the Bankruptcy Code was filed by the Debtor commencing this Reorganization Case.

8.38    "PLAN" means the Plan of Reorganization in the form filed by the Proponents and any amendments or modifications thereof or supplements thereto filed by the Proponents and allowed by the Bankruptcy Code and the Bankruptcy Rules.

8.39    "PRIORITY CLAIMS" means Claims entitled to priority under Sections 507(a)(2) through 507(a)(6) of the Bankruptcy Code.  Claims, if any, entitled to priority under Section 507(a)(7) of the Bankruptcy Code will be treated separately as unclassified Claims in accordance with Section 1129(a)(9)© of the Bankruptcy Code.  There are no Claims against the Debtor under Section 507(a)(8) of the Bankruptcy Code.

8.40    "PROPONENTS" means the Debtor as the proponents of this Plan.

8.41    "PRO RATA SHARE" means the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of all Allowed Claims in such Class.

8.42    "SCHEDULES" set forth on the Schedules of Assets and Liabilities on file with the Clerk of the Bankruptcy Court, including any filed Amendments thereto.

8.43    "SECURED CLAIM" means a Claim secured by a Lien which is valid, perfected, enforceable and not avoidable.

8.44    "REORGANIZATION CASE" means the Debtor's case under Chapter 11 of the Bankruptcy Code which is currently pending before the Bankruptcy Court as 23-12.

8.45    "UNSECURED CLAIM" means any Claim which is not a Secured Claim,  a Priority Claim, an Administrative Claim, or an unclassified Claim having priority and required to be treated as provided in Sections 507(a)(8) and 1129(a)(9)© of the Bankruptcy Code.

8.46    "OTHER DEFINITIONS"  A term used in this Plan that is not defined in this Plan, but is defined in the Bankruptcy Code or the Bankruptcy Rules, will have the meaning ascribed thereto in the Bankruptcy Code or Bankruptcy Rules.

8.47    "INCORPORATION OF DEFINITIONS". All of the definitions stated through this Article 8, Sections 8.1 through 8.45, and all definitions incorporated from the Bankruptcy Code or the Bankruptcy Rules pursuant to Section 8.46, including, but not limited to, substantive provisions stated throughout any and all such definitions, are incorporated by reference as substantive provisions of this Plan.

8.49    GENERAL PROVISIONS:

    Severability        If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforce ability and operative  effect of any other provision of this Plan.

    Binding effect      The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

    Captions         The headings contained in this Plan are for convenience of reference only and  do not affect the meaning or interpretation of this Plan.

    Controlling effect    Unless a rule of law or procedure is supplied by federal law (including the  Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of NEVADA  govern this Plan and any

agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.]

Corporate Governance                    The Debtor will comply with the laws of the State of
                                        Nevada in the governance of the Debtor.

Retention of Jurisdiction:              The Bankruptcy Court will retain jurisdiction under 28
                                        U.S.C. §1930(a)(6) for the following purposes:

(a)     To hear and determine any and all objections to the allowance of and requests to subordinate any Claim or any controversy over the classification thereof;

(b)     To hear and determine any and all applications for compensation or reimbursement of costs and expenses pursuant to Section 330 or Section 1129 of the Bankruptcy Code or as otherwise provided for in the Plan, or for costs and expenses or compensation pursuant to Sections 503(b)(3) through 503(b)(5) of the Bankruptcy Code;

(c)     To hear and determine any and all matters relating to the rejection or the assumption and assignment of executory contracts or unexpired leases, and the allowance or disallowance of any Claims resulting therefrom;

(d)     To enable the Debtor to commence and prosecute after Confirmation any and all contested matters or adversary proceedings which they own or are entitled to pursue.

(e)     To liquidate, estimate, or disallow any Disputed Claims (including contingent or unliquidated Claims) which is not an Allowed Interest;

(f)     To correct any defect, cure any omission, or reconcile any inconsistency in the Plan or in the Confirmation Order as may be necessary to carry out the purposes and the intent of the Plan;

(g)     To hear and determine all issues relating to, and to issue any necessary and appropriate orders with respect to, any governmental or regulatory agencies or instrumentalities;

(h)     To determine any and all disputes which may arise regarding the interpretation of any provisions of the Plan or the Confirmation Order;

(I)     To facilitate consummation of the Plan by entering, consistent with the

Debtor Name SPACE SHADOW LLC                                                                 Case number: 23-14412-HLB

provisions of the Plan, any further necessary or appropriate order(s) regarding enforcement of the Plan or its provisions;

(j)      To enter an appropriate final decree in the Reorganization Case;

(k)      In the event of an appeal(s) of the Confirmation Order, and provided that no stay of the effectiveness of the Confirmation Order has been entered, to implement and enforce the Confirmation Order and the Plan according to their terms;

## Article 9: Discharge

On the effective date of this Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor will not be discharged of any debt:

(I) imposed by this Plan; or

(ii) to the extent provided in § 1141(d)(6)

## Article 10: Other Provisions

There is a pending motion that will jointly administer this case with another case. This could have minor affects on the Plan.

Respectfully submitted,

_____ [Signature of the            _____
Plan Proponent]                                                                [Printed Name]

_____ [Signature of the            _____
Attorney for the Plan Proponent]                                          [Printed Name]

Debtor Name SPACE SHADOW LLC

Exhibit B: Identity and Value of Material Assets of Debtor

See Bankruptcy Schedules

The main asset is the commercial office building valued at $5,700,000.

Exhibit C:    Pre Petition Financial Statements
              (To be taken from those filed with the court)

1

2    EXHIBIT D: (Most Recently Filed Post Petition Operating Report)
     (Summary of Post petition Operating Reports)

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT E: Liquidation Analysis

Plan Proponent's Estimated Liquidation Value of Assets

Assets

| | | |
|---|---|---|
| a. | Cash on hand | $10,536.90 |
| b. | Accounts Receivable | $44,100.00 |
| c. | Inventory | $0 |
| d. | office furniture and equipment | $0 |
| e. | Machinery and equipment | $19,000.00 |
| f. | Automobiles | $0 |
| g. | Building and land | $5,700,000.00 |
| h. | Customer list | $0 |
| i. | Investment property (such as stocks, bonds or other financial assets) | $0 |
| j. | lawsuits or other claims against third parties | $0 |
| k. | other intangibles (such as avoiding powers actions) | $0 |

| | | |
|---|---|---|
| Total Assets at Liquidation Value | | $ |

| | | | |
|---|---|---|---|
| Less: | Secured creditors' recoveries' | — | $ |
| Less: | Chapter 7 trustee fees and expenses | — | $ |
| Less | Chapter 11 administrative expenses | — | $ |
| Less | Priority claims, excluding administrative expense claims | — | $ |
| Less | Debtor's claimed exemptions | — | $ |

| | | |
|---|---|---|
| (1) | Balance for unsecured claims | $ |
| (2) | Total dollar amount of unsecured claims | $ |

Percentage of claims which unsecured creditors would receive or retain in a chapter 7 liquidation                    %

Percentage of claims which unsecured creditors will receive or

1    retain under the Plan:                              % Divide (1) by (2)

Exhibit F: Cash on hand on the effective date of the Plan

Cash on hand on effective date of plan                                      $

Less    Amount of administrative expenses payable on
        effective date of the Plan                                          $

Less    Amount of statutory costs and charges                              $

Less    Amount of cure payments for executory contracts                   $

Less    Other Plan payments due on effective date of the
        Plan                                                                $

Balance after paying these amounts                                          $

The sources of the case Debtor will have on hand
by the effective date of the Plan are estimated as follows:

Cash in Debtor's bank account now                                           $

Net earnings between now and effective date of the Plan
        (State the basis for such projections)                              $

Borrowing (Separately state terms of repayment)                             $

Capital contributions                                                       $

Other                                                                       $

Total (this number should match "cash on hand" figure
        stated above)                                                       $

EXHIBIT G: Projections Of Cash Flow for Post- Confirmation Period

DAVID J. WINTERTON, ESQ.
Nevada Bar No. 004142
DAVID J. WINTERTON & ASSOC., LTD.
7881 W Charleston Blvd., Suite 220
Las Vegas, Nevada 89117
Telephone: (702) 363-0317
Facsimile: (702) 363-1630
david@davidwinterton.com

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| In re: | Case No. BK-S-23-14412-hlb |
| SPACE SHADOW LLC | Chapter 11 |
| Debtor. | Date: February 28, 2024<br>Time: 2:30 p.m. |

## Class [   ] Ballot for Accepting or Rejecting Plan of Reorganization

SPACE SHADOW LLC filed a plan of reorganization dated January 8, 2023 (the Plan) for the Debtor in this case. The Court has [conditionally] approved a disclosure statement with respect to the Plan (the Disclosure Statement). The Disclosure Statement provides information to assist you in deciding how to vote your ballot. If you do not have a Disclosure Statement, you may obtain a copy from David J. Winterton Esq. of the law firm of David J. Winterton & Associates, Ltd 7881 W. Charleston Blvd., Suite 220, Las Vegas, Nevada 89117 (702) 363-0317

{Court approval of the Disclosure Statement does not indicate approval of the Plan by the Court.}

**You should review {the Disclosure Statement and} the Plan before you vote. You may wish to seek legal advice concerning the Plan and your classification and treatment under the Plan. Your [claim] [equity interest] has been placed in class [   ] under the Plan. If you hold claims or equity interests in more than one class, you will receive a ballot for each class in which you are entitled to vote.**

**If your ballot is not received by [name and address of proponent's attorney or other appropriate address] on or before [date], and such deadline is not extended, your vote will not count as either an acceptance or rejection of the Plan.**

**If the Plan is confirmed by the Bankruptcy Court, it will be binding on you whether or not you vote.**

## Acceptance or Rejection of the Plan

[At this point the ballot should provide for voting by the particular class of creditors or equity holders receiving the ballot using one of the following alternatives;]

[If the voter is the holder of a secured, priority, or unsecured nonpriority claim:]

The undersigned, the holder of a Class [   ] claim against the Debtor in the unpaid amount of Dollars ($ )_____[or, if the voter is the holder of a bond, debenture, or other debt security:]

The undersigned, the holder of a Class [   ] claim against the Debtor, consisting of Dollars ($ ) principal amount of [describe bond, debenture, or other debt security] of the Debtor (For purposes of this Ballot, it is not necessary and you should not adjust the principal amount for any accrued or un-matured interest.)

[or, if the voter is the holder of an equity interest:]
The undersigned, the holder of Class [ ] equity interest in the Debtor, consisting of _____ shares or other interests of [describe equity interest] in the Debtor

[In each case, the following language should be included:]
Check one box only

      ☐   **Accepts the plan**

      ☐   **Rejects the plan**

Dated: _____

Print or type name: _____

Signature: _____ Title (if corporation or partnership) _____

Address:    _____

           _____

           _____

Return this ballot to:
      David J. Winterton & Associates, Ltd.
      7881 W. Charleston Blvd., Suite 220
      Las Vegas, Nevada 89117